UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| SARAH DIANNE WEBSTER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 12-130-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Sarah Dianne Webster ("Webster" or "the Claimant") and Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner"). [Record Nos. 9, 11] Webster argues that the Administrative Law Judge ("ALJ") assigned to her case erred in finding that she is not entitled to a period of disability and disability insurance benefits. The Commissioner contends that the record contains substantial evidence in support of the ALJ's decision denying benefits to Webster, and that the decision should be affirmed. Because substantial evidence supports the Commissioner's decision, the Court will grant the Commissioner's motion and deny the relief requested by Webster.

**I.**

Webster filed an application for a period of disability and disability insurance benefits under the Social Security Act, alleging disability beginning June 10, 2007. [Administrative

Transcript, "Tr." p. 17] Her application was denied initially and upon reconsideration. Webster appeared with her attorney Joel Kilroy before ALJ Larry A. Temin for an administrative hearing which was held on August 2, 2010. Vocational expert Janice L. Bending also testified at this hearing.

ALJ Temin issued a decision unfavorable to Webster on September 14, 2010. Webster was 52 at the time of the ALJ's decision. She has a 9th grade education, and work history as a processor at a clothing distribution center. [Tr., p. 33] After reviewing the record and the testimony submitted during the administrative hearing, ALJ Temin determined that Webster suffers from a severe impairment of lumbar spine degenerative disc disease. [Tr., p. 19] Notwithstanding this impairment, the ALJ found that Webster has the residual functional capacity ("RFC") to perform a wide range of light work as define in 20 C.F.R. § 404.1567(b). Specifically, he found that Webster has the RFC to:

> lift/carry up to 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk up to six hours in an eight-hour workday, and sit up to six hours in an eight-hour workday. She can only occasionally stoop, kneel, crouch and climb ramps/stairs. She should not crawl, climb ladders/ropes/scaffolds, or work at unprotected heights.

[Tr., p. 21]

Based on the testimony of the vocational expert, the ALJ found that Webster could not perform her past relevant work. [Tr., p. 8] However, the vocational expert testified that someone with Webster's RFC could perform work as a fast food worker, cashier, or rental clerk. [Tr., pp. 23, 55] After determining that Webster could perform other work existing in significant

numbers in the national economy, the ALJ concluded that she was not disabled. Thus, Webster was denied a period of disability and disability insurance benefits.

Webster requested that the Appeals Council review the ALJ's decision, which was granted. On review, the Appeals Council issued findings that were more unfavorable than the ALJ's decision. [Tr., p. 8] Hhe Appeals Council did not adopt the ALJ's findings and conclusions in full, instead concluding that Webster *could* perform her past relevant work. [*Id.*] The Appeals Council affirmed the ALJ's RFC finding and disability determination, and issued an unfavorable decision on February 28, 2012. [Tr., pp. 8-9] Webster then appealed to this Court.[1]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

---

[1] Although Webster appeals from the Appeals Council's decision, her arguments contest the ALJ's application of the treating physician rule, the RFC, and the ALJ's determination of Webster's credibility. The Appeals Council upheld the ALJ on these issues, thus the Court will discuss the Commissioner's decision as it relates to the ALJ's findings, not the findings of the Appeals Council.

First, the claimant must demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that she suffers from a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether she can perform her past work. If she can, she is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.

2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

Webster argues that the Commissioner's unfavorable decision should be overturned because: (1) the ALJ failed to properly apply the treating physician rule; (2) the ALJ failed to properly evaluate Webster's credibility; and (3) the ALJ's determination of her RFC is not supported by substantial evidence. The Commissioner responds that the ALJ appropriately discounted the opinions of treating physician Dr. Melton and stated good reasons for his determination. The Commissioner also argues that the Court should defer to the ALJ's findings on Webster's credibility because the ALJ's findings are supported by substantial evidence.

### A.     ALJ Temin Did Not Violate The Treating Physician Rule.

Webster argues that "[t]he ALJ's finding that Dr. Melton's opinions were not supported by any objective or clinical findings is itself unsupported." [Record No. 10, p. 7] Webster further agues that Dr. Melton's opinions were "based on clinical and objective medical evidence" and that the ALJ's reason for rejecting Dr. Melton's opinions "is not borne out by the record." [*Id.*, p. 8]

Dr. Melton diagnosed Webster with degenerative disc disease of the lumbar spine.[2] [Tr., p. 272] And he completed two "Multiple Impairment" questionnaires, dated June 7, 2009 and July 15, 2010. In his June 7, 2009 questionnaire, Dr. Melton diagnosed Webster with low back pain, cervical neck pain, irritable bowel syndrome, GERD, and osteoarthritis. [Tr., p. 350] He stated that her prognosis was "fair," estimated Webster's pain level at a five on a 10-point scale and her fatigue at a level three on a 10-point scale, and found her capable of tolerating moderate stress levels. [Tr., pp. 352-355] Dr. Melton also opined that Webster could sit for four hours total and needed to stand and/or walk two hours total in an eight hour day. [Tr., p. 353] He opined that Webster could occasionally lift ten pounds and carry five pounds. [*Id.*] Dr. Melton's July 15, 2010 questionnaire was substantially the same as his earlier questionnaire except that he estimated that Webster's pain level was a seven and her fatigue level was a five. [Tr., p. 391]

The ALJ gave "less weight" to the two questionnaires completed by Dr. Melton than to other examining and non-examining sources. [Tr., p. 22] The ALJ explained that the functional

---

[2] The ALJ accepted Dr. Melton's diagnosis of lumbar spine degenerative disc disease. [Tr., p. 20] He also used the clinical medical evidence from Dr. Melton to determine that Webster's lumbar spine degenerative disc disease is severe "because it significantly impacts her ability to engage in basic work-related activities due to the presence of low back pain." [*Id.*]

limitations imposed by Dr. Melton "are not supported by objective evidence cited in the form or by any clinical exam." [*Id.*]  Webster claims that this was in error.

Generally, a treating source's medical opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's record.  20 C.F.R. § 404.1527(c)(2); *see also Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992).  If the treating source's opinion is not entitled to controlling weight, this does not necessarily mean that the opinion should be completely rejected.  Rather, the ALJ must determine what weight to give to the medical opinion by considering the following factors:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with regard to the record as a whole; (5) whether the treating source is a specialist in the area of his or her opinion; and (6) any other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(2)-(6).  The ALJ must always give "good reasons" for accepting or rejecting a medical opinion.  20 C.F.R. § 404.1527(c)(2).

ALJ Temin considered and rejected Dr. Melton's opinion that Webster "is incapable of performing even a full range of sedentary work and would likely be absent from work more than three times a month as a result of her impairments or treatment."  [Tr., p. 22]  The ALJ adequately stated his reasons for granting these findings less weight, reasoning that "[t]hese assessments are not supported by objective evidence cited in the form or by any clinical exam." [*Id.*]  ALJ Temin also compared the findings to the other medical evidence of record, stating that

"the only thorough musculoskeletal exam, and the most recent exam, is the one performed by Dr. Patel, which was mostly unremarkable." [*Id.*] As the Commissioner points out, although Dr. Melton treated Webster for her complaints of back pain, there is no evidence that he advised Webster to restrict her activities as a result of her back pain or any other impairment. [Record No. 11, p. 5; *see also* Tr., pp. 266-69, 271-72, 275-79, 282-86, 288, 362] Dr. Melton's conservative treatment plan consisted of pain-management medications and monthly steroid injections. [Tr., p. 39] And the MRIs ordered by Dr. Melton revealed findings that were normal, mild, or moderate.[3] [*See* Tr., pp. 19-20, 260] There is simply no objective medical evidence that supports the severe functional limitations that are in Dr. Melton's questionnaires.

ALJ Temin also adequately applied the factors under 20 C.F.R. § 404.1527(c)(2). Although the length of the treatment relationship between Dr. Melton and Webster is one factor to consider, the ALJ also considered that Dr. Melton is not a specialist, but instead is a family physician. *See* 20 C.F.R. § 404.1527(c)(5). The fact that Dr. Melton never referred Webster to a specialist and never recommended surgery undercuts Webster's assertions of disabling back pain and shows that there is a lack of consistency in the record regarding Dr. Melton's opinions in the questionnaires. *See* 20 C.F.R. § 404.1527(c)(3). When Webster was asked by the ALJ whether any doctor had ever recommended surgery to her, she responded: Dr. Melton "said that [surgery] was a possibility in the future." [Tr., p. 37] She also testified that "[a]s far as seeing

---

[3] The May 22, 2008 MRI "revealed a small central disc protrusion at L3-4, which abutted and mildly deformed the thecal sac." [Tr., p. 19] The ALJ also specifically discussed a March 11, 2009 x-ray that "revealed minimal disc space and narrowing at the thoracolumbar level as well as the lumbosacral level." Finally, he considered a subsequent lumbar MRI, performed on April 1, 2009, that "revealed moderate facet arthropathy at L4-5 without mass effect on nerve roots of the central canal" but "no evidence of disc herniation." [Tr., p. 20]

specialists and things like that, my understanding is I have arthritis and, as far as going to a specialist, I really – I guess Dr. Melton thinks the same thing; what's the sense of going? I'm going to get the same diagnosis from them." [Tr., p. 39] Dr. Melton's conservative, unchanging treatment plan does not support his assertions regarding the severity of Webster's functional limitations. *See* 20 C.F.R. 404.1527(c)(3). Dr. Melton's opinions are contradicted by his own treatment of Webster.

Further, the ALJ did not err in granting more weight to state agency physicians and consultants than Dr. Melton. Although Webster correctly points out that the ALJ erroneously referred to Jeremiah Duvall as a physician, this error is harmless and does not require remand. *See Northern v. Astrue,* No. 10-2-DLB, 2011 WL 720763, at *4-5 (E.D. Ky. Feb. 22, 2011). Webster urges the Court to follow *Dewey v. Astrue*, where the Eighth Circuit held that remand was required where the ALJ relied on a non-physician's functional limitations, mistakenly believing that the examiner was a physician. *See* 509 F.3d 447, 449-50 (8th Cir. 2007). Here, however, Mr. Duvall's assessment was affirmed and adopted by the second state agency consultant and physician, Dr. Anzures. [*See* Tr., pp. 342-49] And unlike the claimant in *Dewey*, Webster has proffered no evidence to demonstrate that the ALJ's outcome would have been different had he known that Mr. Duvall was not a physician or a medical consultant. Even without Mr. Duvall's assessment, substantial evidence supports the Commissioner's decision. *See Bell v. Comm'r*, 105 F.3d 244, 245 (6th Cir. 1996) (Substantial evidence means more than just a scintilla of evidence, but less than a preponderance of evidence).

In addition, there is substantial evidence in the record from other sources that contradicts Dr. Melton's opinions. The ALJ gave significant weight to the physical RFC assessment completed by Dr. Anzures on April 15, 2009. [Tr., p. 22] Dr. Anzures' consultative functional limitations reflected "that the claimant can perform a wide range of medium work with lifting and carrying of up to 50 pounds occasionally and 25 pounds frequently." [*Id.*] Although Webster argues that Dr. Anzures "failed to indicate what evidence was reviewed other than a fleeting reference to the prior evaluation" by Mr. Duvall, the assessment actually stated that Dr. Anzures considered the new "MER," or the new medical evidence of record. [*See* Record No. 11, p. 9; Tr., p. 343] Webster has failed to establish that Dr. Anzures did not consider the medical evidence of record.

The ALJ also considered and gave weight to the assessment from Dr. Patel, who provided the most recent examination of Webster. During the examination, Dr. Patel noted that Webster "denie[d] any limitations in regards to walking, standing, or lifting." [Tr., p. 306] Dr. Patel's assessment was mostly unremarkable. He found no significant limitations regarding walking, standing, or lifting, and no limitations in sitting or other normal daily activities. [Tr., p. 308] Although his opinion would not have physically restricted Webster's activities, the ALJ gave Webster's testimony "some credit regarding back pain" and found that a limitation to light work was more appropriate in this case than the limitations suggested by Mr. Duvall, Dr. Anzures, and Dr. Patel. [Tr., p. 22]

Finally, the Court notes that an "ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'"

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 509 (6th Cir. 2006) (per curiam) (quoting *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJs."). The regulations also provide that a physician's opinion regarding whether a claimant is disabled or unable to work is not entitled to significant weight. 20 C.F.R. § 404.1527(d)(3). Therefore, Dr. Melton's statement that he "would not consider [Webster] for gainful employment" is entitled to no special significance. [Tr., p. 459] The ALJ did not err in not considering this statement.

### B. ALJ Temin's Credibility Determination Is Supported by Substantial Evidence.

Webster alleges that ALJ Temin erred regarding the weight given to her credibility. Specifically, she argues that the ALJ applied the wrong legal standard when he used "boilerplate" language measuring the consistency of Webster's statements against the RFC finding, rather than the evidence of record. [Record No. 10, p. 13] When an ALJ makes a determination regarding a claimant's credibility, he is entitled to great deference. *See Buxton*, 246 F.3d at 773. The ALJ is in a unique position to "observe the claimant and judge her subjective complaints." *Id*. In fact, an ALJ is "charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). As a result, an ALJ's credibility determinations are "entitled to deference on judicial review." *Boyett v. Apfel*, 8 F. App'x 429, 434 (6th Cir. 2001). However, if the ALJ "rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Brown*, 35 F.3d 1027, 1036 (6th Cir. 1994).

In addition, the Sixth Circuit has developed the following test to evaluate a claimant's subjective allegations:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters,* 127 F.3d at 531.

Webster testified that she experienced chronic lower back pain on a daily basis, and that some days are worse than others. [Tr., p. 38] She testified that some days she stays in bed all day due to her pain. [*Id.*] Webster testified that she cannot lift more than a gallon of milk, that she can stand for only fifteen to twenty minutes a day, that she cannot sit for more than thirty minutes a day, and that she can walk only one block. [Tr., pp. 35, 38, 41-42] The ALJ considered her testimony, and found that Webster's "lumbar spine degenerative disc disease could reasonably be expected to cause some degree of the alleged symptoms. However, [Webster's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the ALJ's finding on Webster's RFC. [Tr., p. 22] Although the ALJ gave weight to the claimant's testimony regarding "some degree of low back and left hip pain on a daily basis," he did not find that the pain was disabling or prevented her from working within the limitations of light work. [*Id.*]

The Court does not agree that the ALJ "applied the wrong legal standard" when he compared Webster's testimony to his findings on her functional limitations, as well as the evidence of record. [Record No. 10, p. 13] Webster cites two cases from the Seventh Circuit

that called language which was similar to that used by ALJ Temin "boilerplate." *See Bjornson v. Astrue*, 671 F.3d 640, 645-46 (7th Cir. 2012) (stating that the template language used by the ALJ fails to inform a reviewing court in a meaningful, reviewable way of the specific evidence the ALJ considered in determining credibility); *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (stating that the same template language fails to show that the credibility findings have support in the record). However, although ALJ Temin did use certain "boilerplate" language that has been criticized by some reviewing courts, he also spent significant time considering Webster's testimony and comparing it to the medical evidence of record. [*See* Tr., p. 22] Because ALJ Temin conducted an in-depth credibility analysis, the Court does not share the concerns expressed in *Bjornson* or *Shauger*.

The ALJ's decision shows an application of the legal standards laid out by the Sixth Circuit. *See Walters,* 127 F.3d at 531. Looking to the objective medical evidence, the ALJ found persuasive that Webster has never required any back surgery, and has never seen a back specialist. [Tr., p. 22] He noted that her "treatment has been conservative and has consisted of chiropractic intervention, injections and medications prescribed by Dr. Melton." [*Id.*] In addition, "[t]he objective test findings have failed to reveal any disc herniation with significant nerve root involvement." [*Id.*] And "the consultative physical exam performed on the claimant by Dr. Patel on February 7, 2009 was mostly unremarkable."[4] [*Id.*] Webster's statement to Dr.

---

[4] Although Webster argues that the ALJ did not give Dr. Patel's opinion "any weight" in determining Webster's RFC, this assertion is incorrect. While ALJ Temin did not explicitly state the amount of weight given to Dr. Patel's opinion and examination, it is clear that he relied upon it, calling the examination "the only thorough musculoskeletal exam, and the most recent exam." [Tr., p. 22] The ALJ was not required to state the weight given to Dr. Patel, because Dr. Patel was a consultative medical examiner, not a treating physician.

Patel that she had no limitations with walking, standing or lifting is inconsistent with her testimony at the administrative hearing, where she testified that she could only walk one block. [Tr., pp. 42, 306]  The ALJ also noted that although "there was a positive straight leg raise,[5] this was largely limited by flexibility rather than the typical pattern of radiculopathy pain."  [Tr., p. 22]  According to Dr. Patel, there were no other significant findings during the examination. [*Id.*]

The ALJ also looked to Webster's daily activities.  Webster testified that her daily activities include fixing breakfast for herself and her autistic brother, for whom she serves as a care-giver. [Tr., p. 43]  She testified that she is responsible for ensuring that he has eaten and showered, and that she monitors his activity. [*Id.*]  She cooks, drives, and shops for groceries; however, either her brother or ex-husband will go with her if she is getting more than a few groceries. [*Id.*]  The ALJ found that Webster's "activities of daily living are fairly typical and wide reaching" and that they were not "reflective of a disabled individual."  [Tr., p. 22]

The record shows that the ALJ compared Webster's testimony to the objective medical evidence and to her reported daily activities.  The ALJ found inconsistencies, which formed the basis for his credibility determination.  Because of the deference afforded an ALJ on a claimant's credibility and subjective complaints of pain, as well as the fact that the ALJ clearly stated his reasoning behind the weight given to Webster's complaints, the Court finds no error with the ALJ's determination of Webster's credibility.

---

[5] Dr. Patel's examination noted that her straight leg raising was limited to 70 degrees bilaterally. [Tr., p. 308]

### C. The RFC Is Supported by Substantial Evidence.

Finally, Webster alleges error regarding the ALJ's determination of her functional limitations. The RFC determination is a matter reserved for the ALJ. *See* 20 C.F.R. § 404.1546(d). In making this determination, the ALJ considers the medical evidence, non-medical evidence, and the claimant's credibility. The Sixth Circuit has recognized that "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of the claimant's residual functional capacity." *Coldiron v. Comm'r of Soc. Sec'y*, 391 F. App'x 435, 439 (6th Cir. 2010) (internal quotation marks and citation omitted). An ALJ's RFC finding will be upheld where it is supported by substantial evidence.

Substantial evidence supports ALJ Temin's determination of Webster's RFC. The Court has already described at some length the medical and non-medical evidence that was considered in Webster's case. In addition, the Court has deferred to the ALJ's finding on Webster's credibility for the reasons stated above. The ALJ properly considered the medical evidence of record — including Dr. Melton's opinions, the non-medical evidence and Webster's testimony — in determining her RFC. Therefore, the Court will uphold ALJ Temin's RFC finding.

### IV.

ALJ Temin did not err in his application of the treating physician rule or assessment of Webster's credibility. Further, substantial evidence supports the ALJ's determination of Webster's RFC. Accordingly, it is hereby

**ORDERED** as follows:

(1) Plaintiff Sarah Dianne Webster's Motion for Summary Judgment [Record No. 9] is **DENIED**.

(2) Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 11] is **GRANTED**.

(3) The administrative decision of the Commissioner of Social Security will be **AFFIRMED** by separate judgment entered this date.

This 1st day of November, 2012.



Signed By:
*Danny C. Reeves* DCR
United States District Judge